Andrew S. Friedman
afriedman@bffb.com
Francis J. Balint
fbalint@bffb.com
BONNETT, FAIRBOURN
FRIEDMAN & BALINT, P.C.
2901 N. Central Avenue, Suite #1000
Phoenix, AZ 85012
Telephone: 602-274-1100
Facsimile: 602-274-1199

*Plaintiff's Liaison Counsel*

Deborah R. Gross
Robert P. Frutkin
100 Penn Square East, Suite 450
Philadelphia, PA 19107
Telephone: 215-561-3600
Facsimile: 215-561-3000

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| LARRY HEFFEZ, on Behalf of Himself and all Others Similarly Situated, | Civil Action No. |
| Plaintiff, | COMPLAINT |
| vs. | CLASS ACTION |
| LIMELIGHT NETWORKS, INC., GOLDMAN, SACHS & CO., MORGAN STANLEY & CO., INC., JEFFREY W. LUNSFORD, NATHAN R. RACIBORSKI, MICHAEL M. GORDON, and WILLIAM H. RINEHART, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff, individually and on behalf of all others similarly situated, by his attorneys, alleges the following based on the investigation of its counsel, except as to allegations specifically pertaining to plaintiff and its counsel, which are based on personal knowledge. The investigation of counsel is predicated on, among other things, a review of public filings by Limelight Networks, Inc. ("Limelight" or the "Company")

with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, investor conference calls scheduled by Limelight, media reports about the Company, and publicly available trading data relating to the price and volume of Limelight's common stock. This is a class action pursuant to the Securities Act of 1933 on behalf of all purchasers of the common stock of Limelight in its initial public offering ("IPO") pursuant to a Registration Statement filed with the Securities and Exchange Commission ("SEC") on June 7, 2007 ("Registration Statement") and a Prospectus dated on or about June 9, 2007 and filed with the Securities and Exchange Commission ("SEC") ("Prospectus").

## JURISDICTION AND VENUE

1. The claims asserted herein arise under §§11, 12(a) (2) and 15 of the Securities Act of 1933, as amended (the "Securities Act"), 15 U.S.C. §77k, 77l(a) (2) and 77o. Jurisdiction exists pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §§1331 and 1337.

2. Venue is proper in this District because defendant Limelight has its principal executive offices in this District, and many of the wrongful acts alleged herein took place or originated in this District.

3. Defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets in connection with the wrongful activity alleged herein.

## PARTIES

4. Plaintiff Larry Heffez purchased shares of common stock of Limelight during the Class Period, as set forth in the accompanying certification.

5. Defendant Limelight is a high performance content delivery network for digital media, providing massively scalable, global delivery solutions for on-demand and live distribution of video, music, games and social media. Limelight's principal executive offices are located at 2220 W. 14th Street, Tempe, Arizona. The Company's

stock trades on the NASDQ with the ticker symbol "LLNW." All of Limelight's outstanding public common stock was issued pursuant to the Registration Statement for the IPO.

6. Defendant Goldman, Sachs & Co. ("Goldman") was one of the principal underwriters of the IPO. Entities affiliated with Goldman owned 45.2% of the common stock of Limelight prior to the IPO, as the result of transactions in July 2006, and owned 38.1% of Limelight's common stock after the IPO. Joseph H. Gleberman, a managing director of Goldman, is a Director of Limelight and holds the voting and dispositive power for the shares owned by the entities affiliated with Goldman. After the IPO, Goldman issued a report on Limelight and upgraded the stock. On August 10, 2007, after the close of the Class Period, Goldman abruptly reversed itself and downgraded Limelight to "Neutral" from "buy." Goldman stated that "management credibility was shaken by the Q2 2007 disclosures and that pricing and seasonality trends in Limelight's business reveal a maturity level in Limelight's core content-delivery-network (CDN) market.

7. Defendant Morgan Stanley ("Morgan") was one of the principal underwriters of the IPO.

8. Defendant Jeffrey W. Lunsford ("Lunsford") is Limelight's President and Chief Executive Officer and Chairman of the Board of Directors of Limelight. Lunsford signed the Registration Statement.

9. Defendant Nathan F. Raciborski ("Raciborski") is Co-Founder, Chief Technical Officer and Director of Limelight. In the IPO, Raciborski sold 803,041 shares at $15.00 per share and the Nathan Raciborski Grantor Related Annuity Trust sold 803,041 shares at $15.00 per share. Raciborski signed the Registration Statement.

10. Defendant Michael M. Gordon ("Gordon") is Co-Founder and Chief Strategy Officer of Limelight. In the IPO, Gordon sold 400,651 shares of Limelight common stock at $15.00 per share. Gordon settled charges brought against him in 2002

3

by the Department of labor that he failed, in a timely manner, to forward money that was collected from workers at Gateway Data Science Corp., to their retirement plan. Gordon made restitution and paid a penalty.

11.     Defendant William H. Rinehart ("Rinehart") is Co-Founder and a Key Employee of Limelight.  In the IPO, Rinehart sold 504,790 shares of Limelight common stock at $15.00 per share.  Rinehart is precluded from acting as an officer or director of Limelight due to the fact that the SEC enjoined Rinehart from holding such positions through August 2007 due to allegations of a fraudulent scheme to inflate the revenues and earnings at Critical Path, Inc. While Rinehart was associated with that company.  Rinehart settled the SEC allegations.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class (the "Class") consisting of all persons who purchased or otherwise acquired the common stock of Limelight in or traceable to the Limelight IPO between June 8, 2007 and August 8, 2007. Excluded from the Class are defendants, the underwriters of the IPO, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which any defendant has or had a controlling interest.

13.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, 18.4 million shares of Limelight common stock were sold in the IPO.  Plaintiff believes that there are hundreds, if not thousands, of Class members. Members of the Class may be identified from records maintained by or on behalf of Limelight and its underwriters, and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the other members of the Class in that all members of the Class have been damaged by the acts of defendants, which caused members of the Class to purchase Limelight common stock at artificially inflated prices.

15. Plaintiff will fairly and adequately protect the interests of the other members of the Class. To assist him in that endeavor, plaintiff has retained counsel competent and experienced in class and securities litigation. Plaintiff is not aware of any interest it holds which is antagonistic to the interests of the Class.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Securities Act was violated by defendants' acts, as alleged herein;

(b) Whether any materially false or misleading statements were made and/or defendants omitted material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading; and

(c) To what extent the members of the Class have sustained damages and the proper measure of damages.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to pursue individual redress for the damages caused to them by defendants' acts. Plaintiff is not aware of any difficulty that will be presented in managing this action as a class action.

/ / /

/ / /

## SUBSTANTIVE ALLEGATIONS

18. On June 7, 2007, Limelight filed the Registration Statement for the IPO and on June 8, 2007, Limelight filed its prospectus for the sale of 16 million shares of common stock at $15.00 per share. Among the shares being offered for sale were 12.5 million by Limelight and 3.5 million by the selling shareholders, including defendants Raciborski, Gordon and Rinehart, Co-Founders of Limelight, who accounted for approximately 71% of the shares sold by the selling shareholders.

19. The Prospectus had a lengthy section devoted to a detailed description of Limelight's business (Prospectus, pages 62-74). In that section, defendants described Limelight as "a leading provider of high-performance content delivery network services" (Prospectus, page 62). Growth was a large part of the message defendants presented in the Prospectus. Defendants, touting Limelight's current position in its market, stated, "[w]e are rapidly growing our content delivery capacity and expanding our sales and service in advance of what we believe will be a dramatic and sustained surge in Internet traffic" (Prospectus, page 62). Defendants stated that, "[m]ultiple forces have created and continue to drive, a substantial unmet need to rapidly and efficiently deliver large files and broadcast-quality media to large audiences over the Internet" (Prospectus, page 62). Defendants further stressed the growth potential of the market, stating, "[w]e intend to expand our current sales and marketing organization..." (Prospectus, page 72).

20. The Prospectus also presented Limelight as a company well-positioned to meet the growing competition in Limelight's growing market, stating, "as a result of the growth of the content delivery market, a number of companies are currently attempting to enter our market...we believe that our service offerings compete strongly in the areas of performance and scalability..." (Prospectus, pages 71-72).

21. The Prospectus included the Management's Discussion and Analysis of Financial Condition which continued to sound and pound home the theme that the

6

market in which Limelight operated was a growth market and that Limelight was well-positioned to grow in and with that market. Defendants stated that, "[w]e have observed a number of trends in our business that are likely to have an impact on our financial condition and results of operations in the foreseeable future. Traffic to our network has grown in the last three years. This traffic growth is the result of growth in the number of new contracts, as well as growth in the traffic delivered to existing customers. Our near-exclusive focus is on providing CDN services, which we consider to be our sole industry segment" (Prospectus, page 34). Defendants also stated that "[o]ur international revenue has grown recently, and we expect this trend to continue as we focus our strategy of expanding our network and customer base internationally" (Prospectus, page 324).

22.     The Prospectus further embellished on the growth potential of both the CDN services market and Limelight's ability to grow within that market. For example, the Prospectus presented Limelight's nine quarter's of historical quarterly growth in revenues, from $3,593,000 in the March 31, 2005 quarter to $22,876,000 in the March 31, 2007 quarter. At the same time, the Prospectus portrayed Limelight as an increasingly profitable company, from 2004 through the June 30, 2006 quarter. At that point, defendants explained in the Prospectus that Limelight began to record quarterly losses due, not to any business factors affecting the CDN services market of Limelight's business or operations, but rather because of Limelight's compensation-based awards; that is, stock option grants and restricted stock awards. In the prospectus for the IPO, Limelight stated that the full year 2006 loss, and the loss recorded in Q1 2007 was "primarily due to an increase in our stock-based compensation and litigation expenses" (Prospectus, page 33).

23.     Defendants determined to complete the IPO as soon as possible in advance of the disclosure that the CDN services market was in reality a mature market, not a growth market, and that seasonality, not compensation-based awards, was a principal factor in Limelight's ability to report profits. Defendants were negligent in not

7

disclosing that at the time of the Prospectus that by reason of the maturity, pricing pressures and seasonality of the CDN services market, Limelight would be reporting a substantially larger loss for Q2 2007 than it had reported in Q1 2007, and which could not be explained away as the result of compensation-based awards. Defendants were negligent in not disclosing that the seasonality factor was most extreme with their media customers, particularly in the television streaming portion of Limelight's business, who, based on data available to defendants prior to and at the time of the IPO, have historically reduced orders and purchases in the summer. Pricing pressure was most prevalent in relation to Limelight's principal and much larger competitor, Akamai Technologies. Defendants also were negligent in not disclosing at the time of the Prospectus that these same material market factors, maturity, pricing pressure and seasonality, would continue to negatively impact Limelight throughout 2007 and would cause it to record increasing losses for the year.

24. The statements made in the Prospectus, alleged herein in paragraphs 19 through 23 were materially false and misleading because the Prospectus misrepresented and failed to disclose that the market for CDN services, Limelight's sole business segment, was mature, seasonal and experiencing more severe pricing pressures, factors which would cause Limelight to sustain increasing losses in Q2 2007 and throughout 2007, as alleged in paragraphs 19 through 23.

25. On August 9, 2007, the Company disclosed that for the second quarter of 2007, the three months ended June 30, 2007, Limelight recorded a net loss of $10.5 million, or $(0.23) per share on revenues of $21.2 million. Limelight's loss was 250% larger than its loss recorded in the second quarter of 2006. Limelight further disclosed that it expected a loss in the third quarter of 2007, ended September 30, 2007 of between $(0.10) to $(0.08) and a loss per share for the full year 2007 of between $(0.54) to $(0.51). In its conference call with analysts, Limelight explained on the reasons for these losses, stating, in essence, that the market for CDN services was mature and

seasonal, both of which factors put significant pricing pressure on Limelight's products. As a result, Limelight's revenues were down and its losses were up and it would remain that way through 2007. Limelight's per share price immediately dropped from its closing price of $14.80 on August 8, 2007 to $8.60 when the market opened on August 9, 2007, a drop of 42%.

## COUNT I

### (Against All Defendants for Violations of Section 11 of the Securities Act)

26. Plaintiff repeats and realleges each and every allegation made above as if fully set forth herein.

27. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, against all of the defendants.

28. The Prospectus contained materially false or misleading statements.

29. The Company is the issuer of the common stock sold pursuant to the Registration Statement. As the issuer of these securities, the Company is strictly liable for the material misstatements and omissions.

30. Defendants Lunsford and Raciborski each signed the Registration Statement and served as executive officers and directors of Limelight at all times relevant to this action. Defendant Raciborski also sold shares of Limelight common stock in the IPO pursuant to the Registration Statement. Defendants Lunsford and Raciborski and are each, therefore, liable for the materially false and misleading statements made in the Registration Statement. Neither Lunsford nor Raciborski made a reasonable investigation or possessed reasonable grounds for the belief that each of the statements made in the Registration Statement or the Prospectus was true, did not omit any material facts and was not materially misleading.

31. Defendants Gordon and Rinehart each sold shares of Limelight common stock in the IPO pursuant to the Registration Statement and are each, therefore, liable for the materially false and misleading statements made in the Registration

9

Statement. Neither Gordon nor Rinehart made a reasonable investigation or possessed reasonable grounds for the belief that each of the statements made in the Registration Statement or the Prospectus was true, did not omit any material facts and was not materially misleading.

32.     Defendants Goldman and Morgan were each an underwriter as that term is used in Section 11(a)(5) of the Securities Act and are, therefore, liable for the materially false and misleading statements made in the Registration Statement. Neither Goldman nor Morgan made a reasonable investigation or possessed reasonable grounds for the belief that each of the statements made in the Registration Statement or the Prospectus was true, did not omit any material facts and was not materially misleading.

33.     Plaintiff and the Class have sustained damages. The value of the Company's common stock has declined substantially subsequent, and due to defendants' violations of the Securities Act as alleged herein.

34.     At the time plaintiff purchased the common stock of Limelight, plaintiff was without knowledge of the wrongful conduct alleged herein and could not have reasonably discovered these facts. Less than one year has elapsed from the time plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time this Complaint was filed. Less than three years has elapsed from the time the securities upon which this Count is based were bona fide offered to members of the Class.

## COUNT II

**(Against Defendants Limelight, Goldman, Morgan, Raciborski, Gordon and Rinehart for Violations Of Section 12(a)(2) Of The Securities Act)**

35.     Plaintiff repeats and realleges each and every allegation made above as if fully set forth herein.

36.     This Count is brought pursuant to Sections 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), against Defendants Limelight, Goldman, Morgan, Raciborski, Gordon and Rinehart.

37. Defendants Limelight, Goldman, Morgan, Raciborski, Gordon and Rinehart sold, offered, and solicited the sale of the Limelight common stock sold to plaintiff and members of the Class. Those sales and solicitations were made for the financial gain and benefit of the defendants named in this Count and included at least the following:

(a) Limelights received net proceeds from the IPO of approximately $205.5 million; and

(b) Defendants Goldman and Morgan each received substantial fees from the successful completion of the IPO; and

( c) Defendants Raciborski, Gordon and Rinehart each received millions of dollars in proceeds from the sales of their shares of Limelight common stock in the IPO. Raciborski and his trust received approximately $24 million. Gordon received approximately $6 million and Defendant Rinehart received approximately $7.5 million.

38. The Prospectus and Prospectus Supplements made untrue statements of material facts, omitted to state facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts as set forth above.

39. Plaintiff and members of the Class purchased or otherwise acquired the common stock pursuant to the Registration Statement and Prospectus. Plaintiff did not know, and in the exercise of reasonable diligence could not have known, of the material untruths and omissions contained in the Prospectus or the Registration Statement at the time of their purchases of Limelight common stock.

40. By reason of the conduct alleged herein, the defendants named in this Count have violated Section 12(a)(2) of the Securities Act. Accordingly, members of the Class who hold the common stock have a right to rescind their purchases of these securities and hereby elect to rescind their purchases of them to the defendants sued in this Count for the consideration paid for those securities together with interest thereon.

## COUNT III

### (Against Defendants Goldman, Lunsford and Raciborski For Violations Of Section 15 Of The Securities Act)

41. Plaintiff repeats and realleges each and every allegation made above as if fully set forth herein.

42. This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, against the Defendants Goldman, Lunsford and Raciborski.

43. Defendants Goldman, Lunsford and Raciborski had the power through their stock ownership and/or their positions with Limelight to, and did, exercise control over Limelight with respect to its violations of the Securities Act alleged in Count I above. None of the Defendants named in this Count III made a reasonable investigation or possessed reasonable grounds for the belief that the statements made in the Registration Statement or Prospectus were true, did not omit any material facts and were not materially misleading. As a result, Defendants Goldman, Lunsford and Raciborski are liable as control persons for defendant Limelight's primary violations of the Securities Act alleged in this Complaint.

## JURY TRIAL DEMANDED

44. Plaintiff demands a trial by jury.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying his counsel as class counsel;

B. Awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, including prejudgment and post-judgment interest thereon;

   C. Awarding recession to plaintiff and members of the Class who continue to own their limelight common stock;

   D. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   E. Such other and further relief as the Court may deem just and proper.

DATED: August 21, 2007     BONNETT, FAIRBOURN, FRIEDMAN
            & BALINT, P.C.

         By: <u>s/Andrew S. Friedman</u>

           Andrew S. Friedman
           Francis J. Balint, Jr.
           2901 North Central Avenue, Suite 1000
           Phoenix, AZ  85012
           Tel: (602) 274-1100

           *Liaison Counsel*

           LAW OFFICES BERNARD M. GROSS, P.C.
           Deborah R. Gross
           Robert P. Frutkin
           100 Penn Square East, Suite 450
           Philadelphia, PA 19107
           Telephone: 215-561-3600
           Fax: 215-561-3000

           LAW OFFICES KENNETH ELAN
           Kenneth Elan
           217 Broadway, Suite 606
           New York, NY 10007
           (212) 619-0261

           *Attorneys for Plaintiff*